**FILED**
**JANUARY 25, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**08 C 570**

| | |
|---|---|
| SAM'S WINES & LIQUORS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. _____ |
| ) | |
| SEAN HARTIG and ) | |
| PLINIO GROUP LLC ) | **TRIAL BY JURY DEMANDED** |
| (d/b/a Italian Wine Merchants) ) | **JUDGE DARRAH** |
| ) | **MAGISTRATE JUDGE COX** |
| Defendants. ) | |

## COMPLAINT

Plaintiff Sam's Wines & Liquors, Inc. ("Sam's Wines"), by its attorneys, brings this action for injunctive and other relief. Sam's Wines complains as follows:

## CASE OVERVIEW

1.  This action arises out of defendants' actual and threatened misappropriation of Sam's Wines' trade secrets and confidential business information. Prior to his resignation from Sam's Wines in June 2005, Hartig – a former Sam's Wines' salesman – stole Sam's Wines' customer data then took that information to his new employer, Defendant Plinio Group LLC. Defendants then used that information to directly solicit Sam's customers, including some in this District. On information and belief, Defendants are likely to continue to use Sam's Wines' trade secrets and confidential business information to solicit Sam's Wines' customers to the continued detriment of Sam's Wines.

**PARTIES**

2. Sam's Wines is a retailer of wine, spirits, food and other accessories. Sam's Wines is a citizen of the State of Illinois. It is incorporated under the laws of the state of Illinois and has its principal place of business in Chicago, Illinois.

3. Defendant Hartig is an individual who, upon information and belief, is a citizen of the State of New York. Hartig, on information and belief, resides in New York City, New York.

4. Defendant Plinio Group, LLC (d/b/a Italian Wine Merchants) is a retailer of wine. Plinio Group, LLC is, upon information and belief, a citizen of the State of New York and the State of Connecticut. It is a limited liability company organized under the laws of the state of New York, with its principal place of business in New York City. Upon information and belief, all the members of Plinio Group, LLC are citizens of either the State of New York or the State of Connecticut. Upon information and belief, none of the members of Plinio Group, LLC ("IWM") is a citizen of the State of Illinois.

**JURISDICITON AND VENUE**

5. This District Court has personal jurisdiction over each of the Defendants because they do business in this District, engaged in tortious conduct and/or caused the harm at issue in this case in this District.

6. The Court has federal question jurisdiction over this action. The Court's subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 in that this case arises, in part, under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

7. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between the parties and the amount in controversy

exceeds $75,000, including, without limitation, the value to Sam's Wines of the injunctive relief requested herein.

8.  Venue is also proper in this District because a substantial portion of the events giving rise to the claims at issue in this Complaint occurred here. *See* 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

9.  Sam's Wines is a retailer of wines, spirits, food and other accessories, with four stores in Chicago and the surrounding suburbs. Sam's Wines also serves customers throughout the United States through its internet retail operations, which allows customers to purchase products from Sam's Wines through the company's website.

10. In addition to its store locations and internet retail operations, a substantial part of Sam's Wines' business is selling wines directly to customers. Sam's Wines employs salespeople to develop, maintain, and grow relationships with customers who purchase products directly from Sam's Wines. Hartig was one such salesperson employed by Sam's Wines.

11. To facilitate and increase these direct sales to customers, as well as to market and promote in-store sales, over the years Sam's Wines has created a list of Sam's Wines' customers' email addresses and other customer information ("Customer List").

12. The Customer List is developed when customers join Sam's Wines' "Rewards Club." Customers who join Sam's Wines' Rewards Club are entitled to certain benefits not available to customers who are not members of the Rewards Club, including, but not limited to, reduced pricing on certain items and discount certificates received by earning "points" based on the amount of money spent on Sam's Wines' merchandise.

13. Sam's Wines' Customer List also includes contact information of customers who, while not necessarily Rewards Clubs members, nevertheless have provided their contact

3

information to Sam's Wines, requesting that Sam's Wines notify them of special offers by email and provide them with Sam's Wines' newsletter.

14. When Sam's Wines receives the contact information from a Rewards Club member or customer requesting email notifications, that information, including a customer's email address, is stored with Sam's Wines' point-of-sale software vendor.

15. Sam's Wines' Customer List provides Sam's Wines with a competitive edge in the marketplace and has substantial worth. This Customer List was developed over many years and at considerable expense to Sam's Wines.

16. The Customer List is kept highly confidential and is not disclosed to any individuals outside of Sam's Wines or third parties under contract with Sam's Wines whose access to the list is required for Sam's Wines to conduct its business (e.g., Sam's Wines' point-of-sale software vendor).

17. Sam's Wines has instituted numerous policies and precautions to protect the confidentiality of its Customer List and other customer information. Access to the Customer List is password protected and granted only to those employees who need such access to perform their jobs.

18. Moreover, all Sam's Wines' employees, including those who have access to the Customer List must sign an acknowledgement that they have read and will abide by Sam's Wines' confidentiality policies. These policies prohibit such employees from, among other things, disclosing or discussing Sam's Wines' customer information with any third parties.

19. Hartig signed such an acknowledgment during his employment with Sam's Wines.

20.    In reliance on Hartig's agreement to maintain the confidentiality of Sam's Wines confidential information, Hartig was furnished with and granted password-protected access to substantial amounts of Sam's Wines proprietary and confidential information, including Sam's Wines' Customer List.

21.    On information and belief, prior to resigning from Sam's Wines, Hartig accessed Sam's Wines' Customer List without authorization and converted that information to his own personal use and, ultimately, for the use of his current employer, IWM.

22.    On information and belief, Hartig misappropriated the Customer List and/or the information contained therein by accessing a Sam's Wines' computer and then using the password issued to Hartig to access the Customer List or data contained therein.

23.    On information and belief, Hartig then transferred, without authorization, Sam's Wines Customer List and/or data contained therein to another medium for his own personal use, and ultimately for the use of his current employer IWM.

24.    Hartig had no authorization or right to copy all or part of such records for personal use and such use was expressly prohibited by Sam's Wines' confidentiality policies by which Hartig agreed to abide.

25.    On information and belief, Hartig took Sam's Wines' Customer List to his new employer, IWM, who, on information and belief, knew or had reason to know Hartig obtained the Customer List through improper means.

26.    After misappropriating this information, Hartig, on or around November 12, 2007, sent an email to some, if not all, of the customers on Sam's Wines' Customer List, including customers in Illinois, in an attempt to solicit business for his new employer, IWM.

27. In this November 12, 2007 email to Sam's Wines' customers, Hartig, acting in his capacity as an agent for IWM, stated,

> *I used to send wine offers to you from Sam's. Now I'm working for The Italian Wine Merchant in NYC. I wanted to know if you wanted to receive my offers. I will be offering much of the same I did at Sam's as well as wines outside of Italy. We do a lot of interesting things here including Cellar management. Basically everything I offered before. We have a ton of great wines available, Lots of back vintage wines. Also, No Sales Tax outside NYC. Which can help with the shipping costs.*

28. Sam's Wines' confidential trade secrets, including its Customer List, are not publicly available and cannot be reconstructed from other sources. The Customer List represents the result of years of investment, collection of customer data, and marketing efforts and initiatives.

29. Accordingly, Defendants misappropriated and converted Sam's Wines' confidential information, including its Customer List, and used it in their business.

30. Specifically, as evidenced by Hartig's letter of November 12, 2007, Defendants have used and on information and belief will continue to use Sam's Wines' proprietary and trade secret information in their business to do one or more of the following: (a) undermine Sam's Wines' competitive advantages arising from its proprietary and trade secret information; (b) use Sam's Wines' proprietary and trade secret information to improve IWM's business position without compensating Sam's Wines for the use of this proprietary information; and (c) otherwise engage in acts constituting conversion and misappropriation of Sam's Wines' trade secret and confidential information, breach of fiduciary duty and other tortious conduct.

31. Sam's Wines' did not discover Defendants' misappropriation, conversion, and use of its confidential information and the impairment of the integrity of its information and

computer system until on after November 12, 2007, the date Hartig sent the email to Sam's Wines' customers.

32. Subsequent to learning this information, and prior to the filing of this lawsuit, Sam's Wines demanded Defendants return all Sam's Wines' confidential information, including customer lists.

33. Defendants did not respond to this demand and have refused to return any of Sam's Wines' confidential information.

34. Accordingly, on information and belief, Defendants continue to have possession or control of Sam's Wines' proprietary and trade secret information.

35. The misappropriation, conversion, use and continued possession of this confidential information has harmed and will continue to harm Sam's Wines causing it to suffer substantial damages. Additionally, Sam's Wines' is continuing to assess these damages and incurring substantial expenses making this assessment.

## COUNT I

### MISAPPROPRIATION OF TRADE SECRETS
(Against Hartig and IWM)

36. Sam's Wines incorporates the allegations set forth in Paragraphs 1-35 above.

37. Sam's Wines has protectable trade secrets in its Customer List and other customer information to which Hartig had full access while an employee of Sam's Wines.

38. Sam's Wines derives economic value from these trade secrets due to them not being generally known to other persons who could obtain economic value from their disclosure or use.

39. Sam's Wines has made reasonable efforts under the circumstances to maintain its trade secrets' secrecy and confidentiality.

40. Defendants have acquired Sam's Wines' trade secrets knowing or having reason to know that the trade secrets were acquired by improper means.

41. Defendants have disclosed or used Sam's Wines' trade secrets without Sam's Wines' consent and Defendants have used improper means to acquire knowledge of Sam's Wines' trade secrets, or at the time of Defendants' disclosure or use, Defendants knew or had reason to know that knowledge of the trade secrets was (a) derived from or through a person who utilized improper means to acquire them; (b) acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; or (c) derived from or through a person who owed a duty to Sam's Wines to maintain their secrecy or limit their use.

42. Defendants have willfully, maliciously, intentionally, and with a wanton and conscious disregard to the rights of Sam's Wines, misappropriated or threatened to misappropriate Sam's Wines' trade secrets.

43. Defendants have used Sam's Wines' trade secrets in their business.

44. Sam's Wines has been injured and is continuing to be injured by Defendants' misappropriation of its trade secrets.

## COUNT II

### CONVERSION
### (Against Hartig and IWM)

45. Sam's Wines incorporates the allegations set forth in Paragraphs 1-35 above.

46. Sam's Wines' is the rightful owner of all copies of the Customer List and customer information taken by Hartig and has a right to this property.

47. Sam's Wines' right to all copies of the Customer List and customer information taken by Hartig is immediate, absolute, and unconditional.

48. Sam's Wines' has demanded Defendants return to Sam's Wines' all copies of the Customer List and customer information taken by Hartig.

49. The Defendants have wrongfully, willfully, maliciously, intentionally, without authorization, and with a wanton and conscious disregard to the rights of Sam's Wines, retained possession, custody or control over all copies of the Customer List and customer information taken by Hartig.

50. Sam's Wines' has been injured and is continuing to be injured by Defendants' conduct.

## COUNT III

## UNJUST ENRICHMENT
**(Against Hartig and IWM)**

51. Sam's Wines incorporates the allegations set forth in Paragraphs 1-35 above.

52. Hartig had full access to Sam's Wines' confidential information, including the Customer List and other customer information, while an employee of Sam's Wines.

53. Defendants wrongfully misappropriated and converted this information from Sam's Wines.

54. Defendants have used Sam's Wines' confidential information for their own benefit by using this information to improve its business position by contacting Sam's Wines' customers, without compensating Sam's Wines for this information.

55. Defendants have received a benefit as a result of their wrongful conduct.

56. Defendants have unjustly retained the benefit of the use of Sam's Wines' confidential information without compensation to and to the detriment of Sam's Wines.

57. Defendants' retention of benefits derived from Sam's Wines' confidential information violates fundamental principles of justice, equity, and good conscience

## COUNT IV

### BREACH OF FIDUCIARY DUTY
### (Against Hartig )

58. Sam's Wines incorporates the allegations set forth in Paragraphs 1-35 above.

59. As an employee of Sam's Wines, who was allowed access to Sam's Wines' confidential and other information, Hartig owed Sam's Wines certain fiduciary duties.

60. Among these fiduciary duties are the duty of loyalty and fair dealing while working with Sam's Wines, the duty to advance the interests of Sam's Wines, and the duty not to use Sam's Wines' confidential information for Hartig's personal benefit or in ways adverse to Sam's Wines.

61. Hartig willfully, maliciously, intentionally, and with a wanton and conscious disregard to the rights of Sam's Wines, breached these duties by, among other things, while still a Sam's Wines' employee, converting Sam's Wines' confidential information to his personal use, and with the intent of using this information against Sam's Wines' interests after leaving Sam's Wines.

62. Sam's Wines has been injured and is continuing to be injured by Hartig's breaches.

## COUNT V

### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (Against Hartig)

63. Sam's Wines incorporates the allegations set forth in Paragraphs 1-35 above.

64. Sam's Wines' maintains one or more computers and/or computer systems that are "protected computers" pursuant to 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and communication. Sam's Wines' confidential and proprietary information may be

accessed from one or more of these protected computers, access to which is controlled via secret passwords.

65. On information and belief, Hartig intentionally accessed one or more of Sam's Wines' protected computers to access Sam's Wines' Customer Lists and other trade secret information. Hartig's authorized access to Sam's Wines' protected computers was limited to Hartig's performing his duties as an employee of Sam's Wines. On information and belief, Hartig, using Sam's Wines' protected computers, retrieved and copied Sam's Wines' customer lists and other trade secret information prior to resigning from Sam's Wines, and has retained this information to use for his benefit and the benefit of IWM.

66. On information and belief, Hartig intentionally "exceeded authorized access," as that term is defined in 18 U.S.C. § 1030(e)(6), to Sam's Wines' protected computers by using said computers for the purpose of obtaining Sam's Wines confidential and proprietary information for Defendants' gain and for use in interstate commercial activities. Defendants have thus obtained information to which they are not entitled, via interstate communication, thereby violating 18 U.S.C. § 1030(a)(2)(C).

67. By exceeding, and attempting to exceed, authorized access to Sam's Wines' protected computers, Hartig has caused Sam's Wines to incur the loss in terms of responding to his conduct and conducting damage assessments of at least, in the aggregate, five thousand dollars (US$5,000.00) during a one year period.

68. Hartig has also, knowingly, and with intent to defraud Sam's Wines, exceeded his authorized access to Sam's Wines' protected computers and obtained Sam's Wines' confidential and proprietary information, such information being of considerable value to Sam's Wines, thereby violating 18 U.S.C. § 1030(a)(4).

**WHEREFORE,** Sam's Wines respectfully requests the following relief:

A. Direct Defendants to return all originals and copies of information, documents and other things taken from Sam's Wines, including all copies of the Customer List and other Sam's Wines business information in Defendants' possession, custody or control, in hard copy or electronic form (with all electronically stored records to be deleted permanently from Defendants' computers, servers, network, or other electronic memory files);

B. Enjoin Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms and corporations acting in connection or participation with them or on their behalf, from revealing, disclosing or using in any manner information contained in the records of Sam's Wines, including the Customer List and any other Sam's Wines' business information;

C. Impose a constructive trust for Sam's Wines' benefit on all proceeds of Hartig's fiduciary breaches;

D. Award compensatory damages (including, but not limited to, the actual loss caused by Defendants' conduct as well as the unjust enrichment caused by defendants' conduct), punitive damages and attorneys' fees and costs; and

E. Grant such other relief as just and appropriate.


## JURY DEMAND

Sam's Wines demands a trial by jury on all claims so triable.


January 25, 2008                                    Respectfully Submitted

                                                    SAM'S WINES & LIQUORS, INC.

                                    By:     ___/s/ Dane A. Drobny_____

                                            Dane A. Drobny
                                            Christopher Weller
                                            Winston & Strawn LLP
                                            35 W. Wacker Drive
                                            Chicago, IL 60601
                                            Tel: (312) 558-5600
                                            Fax: (312) 558-5700
                                            ddrobny@winston.com
                                            cweller@winston.com