UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM'S WINES & LIQUORS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SEAN HARTIG and PLINIO GROUP, LLC, ) <br> (d/b/a Italian Wine Merchants) ) <br> ) <br> Defendants. ) <br> ) | Case No. 08 C 0570 <br><br> Hon. John W. Darrah <br> United States District Court Judge <br><br> Hon. Susan E. Cox <br> United States Magistrate Judge |

**DEFENDANTS' RULE 12(b)(1) AND 12(b)(6)**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Sean Hartig ("Hartig") and Plinio Group, LLC d/b/a Italian Wine Merchants ("IWM") (collectively "Defendants"), by their undersigned attorneys and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss Plaintiff Sam's Wines & Liquors, Inc.'s ("Sam's Wines") Complaint. In support of their Motion, Defendants state as follows:

### INTRODUCTION

1. Plaintiff has filed claims against Defendants under the Computer Fraud and Abuse Act ("CFAA") and Illinois state law based solely upon Plaintiff's allegations, made almost entirely "upon information and belief," that Hartig took Sam's Wines' Rewards Club Customer List ("Customer List") in 2005 and then – over two and a half years later -- used that information for his personal use and to purportedly solicit customers for his new employer, IWM, a specialty wine retailer in New York. In so doing, Plaintiff contends that this matter is properly brought in federal court based upon either federal question jurisdiction under the CFAA or diversity jurisdiction because complete diversity exists between the parties and the amount in

controversy allegedly exceeds $75,000. As shown below, however, Plaintiff's Complaint should be dismissed for two reasons. First, Plaintiff has failed to state a claim under CFAA. Second, as the attached declarations make clear, Plaintiff cannot establish, as it must, that its state law claims meet the amount in controversy requirement. The Court therefore cannot invoke either federal question or diversity jurisdiction over the action. As such, the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

## **LEGAL STANDARD**

2.      For federal question jurisdiction to exist, the plaintiff must sufficiently plead facts showing that the case arises "under the Constitution, laws, or treaties of the United States." *Northrop Corp. v. AIL Systems, Inc.*, 959 F.2d 1424, 1426 (7th Cir. 1992) (quoting 28 U.S.C. § 1331). To invoke diversity jurisdiction, a plaintiff must establish both complete diversity and that the "matter in controversy exceeds the sum or value of $75,0000, exclusive of interest and costs." *Smith v. American General Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003) (quoting 28 U.S.C. § 1332(a)). As set forth more fully below, based on the allegations in the Complaint and the attached declarations, Plaintiff cannot demonstrate the existence of federal question or diversity jurisdiction.

3.      Dismissal for failure to state a claim is proper under Federal Rule of Civil Procedure 12(b)(6) where, as here, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). To withstand dismissal, the plaintiff must allege all of the elements necessary to recover on his claim. *See Xydakis v. Target, Inc.*, 333 F. Supp. 2d 683, 685 (N.D. Ill. 2004). The plaintiff "must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.

1985). The court should accept the factual allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005).

4. Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the Rule 12(b)(1) motion to dismiss is based on denials of the truth of the allegations, the court "may look beyond jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject-matter jurisdiction exists." *Illinois Bell Telephone Co., Inc. v. Global Naps Illinois, Inc.*, No. 06 C 3431, 2007 WL 4531790 (N.D. Ill. Dec. 17, 2007) (quoting *Grafon Corp. v. Hausermann*, 602 F.3d 781, 782 (7th Cir. 1979).[1] To support its motion to dismiss, the movant may use affidavits and other material. *United Phosphorus*, 322 F.3d at 946. The party invoking jurisdiction bears the burden of supporting its jurisdictional allegations by competent proof. *Garelli Wong & Associates, Inc. v. Nichols*, No. 07 C 6227, __, F. Supp. 2d __, 2008 WL 161790, *4 (N.D. Ill. Jan. 16, 2008). Competent proof has been interpreted to mean a preponderance of the evidence or proof to a reasonable probability that jurisdiction exists at the time the complaint is filed. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995).

## FACTUAL BACKGROUND

**Allegations of Plaintiff's Complaint**

5. This matter purportedly arises out of Hartig's employment with Sam's Wines in Chicago in 2005 and events and actions that occurred nearly two years ago. According to Plaintiff's Complaint, Hartig was employed by Sam's Wines until his resignation in June 2005. (*See* Complaint ("Compl."), ¶ 1). While employed with Sam's Wines, Hartig was furnished with

---

[1] A copy of all unreported decisions cited in this Motion can be found at Exhibit 1.

and granted password-protected access to Sam's Wines proprietary and confidential information. (*Id.*, ¶ 20). Upon Plaintiff's information and belief, Hartig, prior to resigning from Sam's Wines in June 2005, accessed and transferred Sam's Wines Customer List to another medium for his personal use. (*Id.*, ¶¶ 21, 23). According to Plaintiff's Complaint, **over two and a half years later**, Hartig, newly-employed at IWM, sent an e-mail to some of the customers on the Customer List, in an attempt to solicit business for IWM. (Compl, ¶ 26). Plaintiff's Complaint did not attach any documents supporting its claims or any of the damage and/or losses it has allegedly suffered as a result of Defendants' purported conduct.

**Allegations Missing from Plaintiff's Complaint**

6.  Among its deficiencies, Plaintiff's CFAA claim is also noteworthy for what it fails to allege. Despite the allegations of conduct giving rise to its purported claim, Plaintiff fails to allege with any specificity how Hartig improperly accessed Sam's Wines computers, when and how confidential information was taken, and what information was taken. Plaintiff also fails to adequately allege the loss it allegedly incurred as a result of Hartig's purported actions. Plaintiff's Complaint is almost entirely based on allegations that are resulting from Plaintiff's "information and belief" rather than on any substantiated or supported facts. This is particularly troubling given that information regarding its own computer system is uniquely available to Sam's Wines.

**Facts Regarding Diversity Jurisdiction**

7.  Based on the Declarations attached to Defendants' Motion, it is apparent that Plaintiff's state law claims are not properly before this Court because Plaintiff cannot allege that this matter involves claims exceeding the jurisdictional threshold of $75,000. Hartig denies that he took the Customer List prior to his resignation in 2005. (*See* Declaration of Sean Hartig

("Hartig Dec."), attached hereto as Exhibit 2, ¶ 4). But more specifically, there are, at most, 6 persons, who Hartig sold products to while working for IWM and with whom Hartig may have encountered while working with Sam's Wines. (Hartig Dec., ¶ 3). A review of IWM's sales database indicates that, at most, these sales amount to less than $20,000 in gross sales, which, in turn, amounts to significantly less in profits arising out of those sales. (*See* Declaration of Julie Lee ("Lee Dec."), attached hereto as Exhibit 3, ¶ 4).

### PLAINTIFF'S CFAA CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

8.   Under the CFAA, a person may maintain a civil action if the complained of conduct falls within certain provisions. 18 U.S.C. § 1030(g). Specifically, for civil liability to attach, the plaintiff must adequately allege facts establishing that the alleged violator committed one of the offenses set forth in the CFAA and that the alleged offense caused one of the injuries enumerated in subsection (a)(5)(B) of the CFAA. *Garelli Wong*, __, F. Supp. 2d __, 2008 WL 161790 at * 4-5.

9.   Here, Plaintiff alleges that Hartig violated subsections (a)(2)(C) and (a)(4).[2] Specifically, Plaintiff alleges that Hartig exceeded his authorized access to his Sam's Wines' computer by accessing and transferring certain confidential information and that Hartig's conduct caused it to incur a "loss" in terms of responding to his conduct and conducting damage assessments of at least $5,000 during a one-year period. (*See* Compl., ¶¶ 66-68). A violation under subsection (a)(2)(C) involves someone who "intentionally accesses a computer without

---

[2] As the basis for its CFAA claim, Plaintiff alleges that Hartig violated subsection (a)(2)(C) and/or subsection (a)(4). (*See* Plaintiff's Complaint ("Compl."), ¶¶ 66, 68). Several courts have noted that those subsections create criminal - not civil liability. *See e.g., Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574, 580 (D. Minn. 2007). Accordingly, these courts have held that CFAA claims, based on violations of (a)(2)(C) and (a)(4), fail as a matter of law. *See Id.* Other courts, however, have held that a party may bring a private cause of action for any violation under the CFAA. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 n. 5 (9th Cir. 2004). Though Defendants respectfully submit that the CFAA provides that the aforementioned sections do not provide for civil liability, Defendants' Motion will address Plaintiff's alleged violations of the CFAA without waiving this issue.

5

authorization or exceeds authorized access and thereby obtains information from any protected computer if the conduct involved an interstate or foreign communication." A violation under subsection (a)(4) involves someone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."

10. Plaintiff's CFAA claim fails for three reasons. First, Plaintiff has not (and cannot) adequately allege that Hartig accessed a protected computer without authorization or that he did so in a manner that exceeded his authorized access. Thus, there can be no liability under subsections (a)(2)(C) or (a)(4). Second, Plaintiff has not (and cannot) allege that it suffered any "damage," as that term is defined under the CFAA, as a result of Hartig's conduct. Third, Plaintiff has not (and cannot) allege that it suffered a "loss," as that term is defined under the CFAA, as a result of Hartig's conduct. Thus, there can be no liability under any of the aforementioned subsections.

**Plaintiff has Failed to Sufficiently Allege that Hartig Accessed Sam's Wines' Protected Computer Without Authorization or in a Manner that Exceeded his Authorized Access.**

11. According to Plaintiff's Complaint, it concedes that Hartig was granted access to the confidential information allegedly at issue. (Compl., ¶ 20). Plaintiff, however, alleges that Hartig exceeded his authorized access when he allegedly obtained the confidential and proprietary information for his own use. (Compl., ¶ 66). The issue therefore is whether Hartig's alleged copying and transfer of the confidential and proprietary information at issue (even taking this as true) exceeded his authorized access as plead by Plaintiff.

6

12.     Courts are split on whether information permissibly accessed and later misused qualifies as "exceeding authorized access" for purposes of the CFAA. While some courts have applied principles of agency law to the CFAA and have held that an employee who accesses a computer exceeds his authorized access whenever the employee, without the knowledge of the employer, acquires an adverse interest or is guilty of a serious breach of loyalty, a number of other courts have opted for a better-reasoned and less expansive view, holding that access "exceeding authorized access" occurs where initial access is permitted, but only as to certain information. *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964-67 (D. Ariz. 2008) (citations omitted). IWM respectfully submits that the latter view is the correct view.

13.     Particularly instructive in this regard is the *Shamrock* decision which involved a virtually identical set of facts and circumstances. In *Shamrock*, an employer brought a CFAA claim against a former employee who had, prior to his resignation, e-mailed numerous documents containing the employer's confidential information to his personal e-mail account. *Shamrock*, 535 F. Supp. 2d at 962. Within two weeks of e-mailing the confidential information to his personal e-mail account, the defendant began employment with plaintiff's competitor. *Id.* The employer conceded that the former employee was authorized to access the confidential information at issue while he was an employee but argued that he was no longer authorized to access the confidential information once he acquired the improper information to use the information to benefit himself and his future employer. *Id.* at 964. After analyzing the statutory language and interpreting the legislative history, the court held that CFAA targeted the "unauthorized procurement or alteration of information, not its misuse or misappropriation." *Id.* at 965. Based on the plaintiff's allegations, the court dismissed the employer's CFAA claim finding that the employee was authorized to access the computer at issue and was permitted to

view the specific files he allegedly e-mailed to himself, and thus did not access the information at issue "without authorization" or in a manner that "exceeded authorized access." *Id.* at 968. *See also Lockheed Martin Corp. v. Speed*, No. 6:05 CV 1580, 2006 WL 2683058 (M.D. Fla. Aug. 1, 2006) (holding that Lockheed failed to state a CFAA claim against its former employees, who allegedly accessed plaintiff's computers, copied proprietary information and delivered trade secrets to plaintiff's competitor, as Lockheed permitted the employees to access the company computer and permitted the employees to access the precise information at issue. Thus, the employees did not access the computer without authorization and did not exceed authorized access); *International Ass'n of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 498-99 (D. Md. 2005) (holding that union plaintiff failed to state a CFAA claim against secretary treasurer, who had allegedly accessed confidential membership information on secure proprietary website on behalf of herself and rival union, as she was authorized to access website and entitled to see all information stored therein).

14.  As in *Shamrock*, Plaintiff concedes that it granted Hartig access to confidential information during Hartig's employment with Sam's Wines. (Compl., ¶ 20). As with the *Shamrock* defendant, Hartig, according to Plaintiff's complaint, was permitted to view the confidential information at issue at the time of his allegedly violative conduct. (Compl., ¶ 21). As with the *Shamrock* defendant, Hartig allegedly copied the confidential information while employed with Sam's Wines and transferred that information to another medium for his own use. (Compl., ¶ 21). Therefore, as in *Shamrock* (and *Speed* and *Werner-Masuda*), this Court should find that, based on Plaintiff's allegations, Plaintiff has not (and cannot) allege that Hartig accessed the confidential information at issue in a manner that "exceeded authorized access."[3]

---

[3] Plaintiff may direct this Court to the Seventh Circuit's decision in *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418 (7th Cir. 2006), to support its claim that Hartig exceeded his authorized access when he allegedly

8

**Plaintiff has Failed to Sufficiently Allege Damage or Loss under the CFAA.**

15.     In order to state a cause of action under the CFAA, the plaintiff must allege "damage" or "loss," as those terms are defined under the CFAA. 18 U.S.C. § 1030(g). "Damage" is defined as "impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. § 1030(e)(8). Loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

16.     Here, Plaintiff has failed to sufficiently plead "damage" or "loss" as those terms are defined under the CFAA. Plaintiff has not (and cannot) allege that Hartig's purported copying of information in June 2005 impaired the integrity or availability of that information more than two years later. At most, Plaintiff has alleged that Hartig copied certain files from his Sam's Wines desktop computer and then transferred that information to another medium. (Compl.¶ 23). Such an allegation is not enough to satisfy the statutory requirement for "damage." *See Garelli Wong*, __ F. Supp. 2d __, 2008 WL 161790 at * 5 (holding that allegations that defendant copied (and e-mailed files to himself) from a computer without authorization did not constitute damage under the CFAA); *see also Speed*, 2006 WL 2683058 at * 8 (holding that plaintiff failed to sufficiently allege damage noting that copying of information

---

copied the confidential information at issue. In *Citrin*, the Seventh Circuit held that the plaintiff sufficiently alleged cause of action under the CFAA where the former employee permanently deleted certain data from a company-issued laptop after resigning from the company. 440 F.3d at 419, 421. The *Citrin* case, however, is both legally and factually distinguishable and thus inapplicable. It is legally distinguishable as it involved a different subsection of the CFAA, (a)(5)(A)(i), which provides liability to whoever ""knowingly causes the transmission of a program . . . and as a result of such conduct, intentionally causes damage without authorization to a protected computer." It is factually distinguishable because the allegedly violative conduct occurred **after** the employee resigned from his employment with the plaintiff employer.

9

from a computer onto a CD or PDA is a relatively common function that typically does not, by itself cause permanent deletion of the original computer files); *Worldspan, L.P. v. Orbitz, LLC*, No. 05 C 5386, 2006 WL 1069128 (N.D. Ill. April 19, 2006) (dismissing plaintiff's CFAA claim where it failed to "allege any facts indicating that the completeness, useability, or availability of [its] data was impaired.").

17. Plaintiff has also failed to adequately allege that it suffered a "loss" in excess of $5,000 during a one-year period. Plaintiff has simply alleged, in conclusory fashion, that Hartig has caused Sam's Wines to incur some loss in terms of responding to his conduct and conducting damage assessment of at least, in the aggregate, five thousand dollars during a one-year period. (Compl., ¶ 67). Plaintiff's allegation, without more, is not enough to maintain a civil cause of action under the CFAA. Under the CFAA, "loss" has consistently meant the cost of investigating or remedying damage to a computer or the cost incurred because the computer's service was interrupted. *Nexans Wires, S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004). Moreover, the alleged "loss" must also somehow relate to the complained-of-conduct. *See Civic Center Motors, Ltd v. Mason Street Import Cars, Ltd*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005) (holding that the alleged loss must relate to investigating or remedying damage to the computer at issue or the inoperability of the accessed computer system). As such, loss of trade secrets and lost profits do not constitute "loss" under the CFAA. *Nexans*, 319 F. Supp. 2d at 475. Plaintiff's conclusory allegations do not specify the kind or extent of Plaintiff's "response to [Hartig's] conduct or the "damage assessment" conducted by Plaintiff as they specifically relate to Hartig's alleged copying of certain information from his computer at Sam's Wines. They are therefore insufficient to maintain a claim under the CFAA.

18.　Accordingly, for the reasons set forth above, Plaintiff's CFAA claim against Hartig must be dismissed as Plaintiff has failed to adequately allege that Hartig's alleged conduct exceeded his authorized access or that it suffered any "damage" or "loss" as required under the CFAA.

## NO DIVERSITY JURISDICTION EXISTS

19.　In addition to failing to establish the existence of federal question jurisdiction under the CFAA, Plaintiff also fails to establish the existence of diversity jurisdiction for its state law claims. Plaintiff's state law claims (Misappropriation of Trade Secrets, Conversion, Unjust Enrichment, and Breach of Fiduciary Duty) all seek damages for losses resulting from Defendants' alleged use of Plaintiff's confidential information. (*See* Compl. generally). Hartig did not copy or use Plaintiff's Customer List and thus there can be no damages resulting from the alleged misuse of that information. (Hartig Dec., ¶ 4). Indeed, Plaintiff's Complaint does not allege that Hartig actually accessed, copied and transferred that Customer List; rather, it simply alleges that he did so "on information and belief." (Compl., ¶¶ 21-23). Such allegations, without more, do not constitute "competent proof" that Hartig copied and transferred the Customer List, that the Customer List was used by IWM, or that the amount in controversy exceeds $75,000.

20.　In any event, Plaintiff's unsubstantiated and unsupported assertion that Plaintiff's state law claims are properly before this Court fail for the additional reason that Plaintiff cannot demonstrate that any of the information arguably relating to the time of Hartig's employment with Sam's Wines was used in any manner whatsoever by Hartig, for either his personal use or during his employment with IWM, in a way that would support diversity jurisdiction. The attached declarations make clear that, at best, the gross sales from persons whom Hartig may have encountered while working at Sam's Wines in 2005 and who placed orders through Hartig

with IWM amount to less than $20,000, far below the jurisdictional threshold. (Lee Dec., ¶ 4; Hartig Dec., ¶ 3).

21.     Plaintiff therefore cannot allege (or establish), as it must, that the amount in controversy, with respect to its four state law claims, meets the statutory requirement to confer diversity jurisdiction over this matter.

## CONCLUSION

WHEREFORE, because Plaintiff cannot plead a cause of action under the CFAA and that it has failed to establish that the amount in controversy requirement is satisfied with respect to its state law claims, Defendants respectfully request that this Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, and for such other and further relief as the Court deems just and proper.

                                        SEAN HARTIG AND PLINIO GROUP,
                                        LLC d/b/a ITALIAN WINE MERCHANTS


                                        By:    /s/ Francis A. Citera
                                               One of their Attorneys

Francis A. Citera
Paul J. Ferak
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400