IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAM'S WINES & LIQUORS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-00570 |
| | ) | |
| SEAN HARTIG and | ) | Judge John W. Darrah |
| PLINIO GROUP LLC | ) | Mag. Judge Susan E. Cox |
| (d/b/a Italian Wine Merchants) | ) | |
| | ) | |
| Defendants. | ) | |

**SAM'S WINES & LIQUORS, INC.'S
RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants stole Sam's Wines & Liquors, Inc.'s ("Sam's") customer list and then used that list to e-mail solicitations to Sam's customers. See Compl. at ¶ 27 (*"I used to send you wine offers to you from Sam's. Now I'm working for [IWM]. I wanted to know if you wanted to receive my offers . . . ."*). Prior to submitting to *any* discovery, defendants hope to sidestep liability for that conduct by contesting this Court's subject matter jurisdiction. Two separate and independent grounds exist for such jurisdiction. First, Sam's alleged a claim arising under federal law. Contrary to defendants' suggestions, Sam's properly pleaded this claim. Indeed, the Seventh Circuit already has rejected the exact arguments on which defendants base their motion. Second, this Court has diversity jurisdiction over Sam's claims. Although defendants assert that Sam's allegations failed to satisfy Section 1331(a)(2)'s $75,000 jurisdictional threshold, no basis exists – as the law of this Circuit requires – to support a finding "*with a legal certainty*" that this threshold cannot be met. Sam's allegations support compensatory damages far in excess of $75,000 as well as punitive damages and attorneys' fees that push the recoverable damages even

higher. Accordingly, defendants' motion should be denied, and this case permitted to proceed on the merits.

## BACKGROUND

### A. Legal Standard

At the motion to dismiss stage, all of the allegations set forth in Sam's Complaint must be accepted as true. *Disability Rights Wisconsin, Inc. v. Walworth County Board of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008); *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Moreover, the Court must draw all reasonable inferences from those allegations in plaintiff's favor. *Transit Express*, 246 F.3d at 1023. If Sam's alleged facts that plausibly suggest it is entitled to relief, then its complaint must stand. *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007).

### B. Sam's Complaint

In its Complaint, Sam's alleges that it is a retailer of wines and other spirits that operates stores in the Chicago area and serves customers throughout the United States through its internet retail operations. (Compl. ¶ 9). To facilitate these sales, Sam's created a list of customers (sometimes referred to as the Rewards List) which contains names, email address and other information of the members of Sam's Rewards Club ("Customer List"). (*Id.* ¶¶ 11, 12). Customers in the Rewards Club were entitled to certain benefits not available to non-members. (*Id.* 12). This Customer List was developed over many years at considerable expense to Sam's, and provides the company with a considerable edge in the marketplace. (*Id.* ¶ 15). The Customer List is remotely stored with Sam's point-of-sale software vendor, and the only way to access the Customer List is through a user name and password. (*Id.* ¶¶ 14, 17).

Access to the Customer List is provided only to employees who need this access to perform their job duties, and the right to access this information was limited to performing such duties. (*Id.* ¶¶ 17, 65). Hartig was granted access to the Customer List as part of his employment duties with Sam's. (*Id.* ¶ 20). Prior to resigning from Sam's, in violation of Sam's policies and his fiduciary duties as an employee, Hartig accessed the customer list and transferred the data contained therein to another medium for his own personal use in the future. (*Id.* ¶¶ 21-24). Hartig took this information to his new employer, IWM, and began soliciting Sam's customers on behalf of IWM. (*Id.* ¶ 26, 27).

Upon learning of the misappropriation and conversion of its property, Sam's contacted defendants demanding they immediately cease using and return the Customer List. (*Id.* ¶ 32). Those requests were ignored, and defendants never responded. (*Id.* ¶ 33). Accordingly Sam's was forced to bring this action. Sam's complaint asserts claims for Misappropriation of Trade Secrets, Conversion, and Unjust Enrichment against Hartig and IWM, and claims for Breach of Fiduciary Duty and the Computer Fraud and Abuse Act ("CFAA") against Hartig.

## ARGUMENT

**I.    SAM'S PROPERLY PLEADED A CFAA CLAIM**

    **A.    Hartig Exceeded His Authorized Access**

No basis exists to dismiss Sam's CFAA claim. Defendants argue that Sam's failed to plead facts sufficient to show that Hartig accessed the Customer List in a manner that "exceed[ed] [his] authorized access." According to Sam's allegations, Hartig accessed the list when still employed by Sam's. Based on an Arizona district court decision, defendants argue that such access cannot serve as a basis for a CFAA violation.

This Circuit already has rejected that identical argument. *See Internt'l Airport Centers, LLC v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006). In *Citrin*, the court unequivocally held that an employee's access to an employer's computer for an improper purposes is unauthorized, even if the employee was authorized to access the computer as part of his legitimate job duties. *See id* at 420-21. The defendant in that case permanently deleted vital data on his employer-issued laptop computer after deciding to resign. *Id.* at 419. *Citrin* reasoned that while the employee may have been authorized to access the laptop, such access was pursuant to the agency relationship existing between the employee and employer. *Id.* at 420-21. Accordingly, the defendant's "authority" as agent terminated if he acquired interests adverse to the principal "or [is] otherwise guilty of a serious breach of loyalty to the principal." *Id.*, (citing *Restatement (Second) of Agency*, § 112 and *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp.2d 1121 (W.D. Wash. 2000)). Hence, although the defendant was authorized to access the computer, accessing it to destroy data exceeded his authorized access.

As in *Citrin*, although Hartig was authorized to access Sam's computer, accessing it to misappropriate Sam's Customer List exceeded his authorized access. Indeed, the Complaint alleges that Hartig's "authorized access to Sam's Wines' protected computers was limited to . . . his duties as an employee of Sam's Wines." (Compl. ¶ 65). It then claims that, Hartig accessed the computer prior to his resignation (as did the defendant in *Citrin*) to copy the Customer List and retain that information to use for his benefit and the benefit of IWM. (*Id.*). The Complaint alleges that such access exceeded his authorized access. (Compl. ¶ 66). Under *Citrin*, these

allegations more than suffice to show that Hartig "exceeded his authorized access" as set forth in the CFAA. *See Citrin*, 430 F.3d at 420-21.[1]

Defendants' efforts to distinguish *Citrin* are unavailing. They first argue that the case is distinguishable on its facts, as the defendant in *Citrin* already resigned when he committed his CFAA violation. The decision, however, never hinged on his resignation. Whether the defendant still was employed or in the process of resigning, the Court emphasized that his authorized access terminated not because of the tendering of his resignation, but when the employee acted against his employer's interest and breached his duty of loyalty. *Citrin*, 440 F.3d at 420-21. Hence, Hartig's resignation status at the time he stole the Customer List does not allow him to sidestep *Citrin*. His authorized access terminated as soon as he accessed the Customer List for the purpose of misappropriating it for IWM. *See id.*

Plaintiff's next tries to escape *Citrin* by arguing that it concerned a different subsection of the CFAA. *Citrin's* holding focused on the authorization issue and not the conduct occurring after such authorized occurred. *Citrin* at 420-21. Thus, whether the defendant accessed a computer to transmit a damaging program, as did the defendant in *Citrin*, or accessed a computer to obtain something of value and defraud his employer (as Hartig did here), has no bearing on

---

[1] *Citrin's* holding aside, Sam's allegations establish a violation of the CFAA's plain language. The statute states that a defendant exceeds his authorized access by accessing the computer "to obtain . . . information in the computer [he] is **not entitled** to so obtain or alter." 18 U.S.C. § 1030(e)(6) (emphasis added). The Complaint alleges that Hartig was not entitled to access its computers to misappropriate the Customer List. (Compl. ¶¶ 20, 24, 65, 66). Indeed, Hartig lost any entitlement to obtain information from a Sam's computer once obtaining this information would be adverse to Sam's or in breach of his duty of loyalty to Sam's. *See Citrin,* 440 F.3d at 420-21. *See also, CH Robinson Worldwide, Inc. v. Command Transport., LLC*, 05 C 3401, 2005 WL 3077998, at **3, 4 (N.D. Ill. Nov. 16, 2005) (plaintiff stated CFAA claim when it alleged former employees "**intentionally exceeded their authorized access** when they accessed [employer's] protected network to acquire [trade secrets] for the benefit of themselves and [their new employer.]") (emphasis added).

whether the conduct was authorized or exceeded authorized access. Accordingly, Sam's properly pleaded that Hartig exceed his authorized access when accessing the Customer List.[2]

### B. Sam's More Than Adequately Alleges "Loss" and "Damage"

Defendants next argue that this Court should dismiss Sam's CFAA claim because plaintiff failed to plead sufficiently "damage" or "loss" under the CFAA. They argue that Sam's did not plead that Hartig's conduct "impairs the integrity or availability" of Sam's customer list. (Def. Motion, pp. 9-10).

The CFAA's plain language, does not require such allegations. Instead, a plaintiff who incurred costs in excess of $5,000 responding to a defendant's conduct and conducting a damage assessment suffers a "loss" actionable under the CFAA. 18 U.S.C. § 1030(e)(11) (defining loss as "any reasonable cost to any victim, including the cost of responding to an offense [or] conducting a damage assessment. . . .") *See also Schwab v. Carter,* 04 C 7071, 2005 WL 351929 at * 3 (N.D. Ill. Feb. 11, 2005) (Plaintiff "alleges that it incurred costs of at least $5,000 during a one-year period. As such [plaintiff] has properly alleged a civil cause of action under the CFAA.").

Sam's made those exact allegations here when defining its loss or damages under the CFAA. (Compl. ¶ 67) ("Hartig has caused Sam's Wines to incur the loss in terms of responding to his conduct and conducting damage assessments of at least, in the aggregate, five thousand dollars (US$5,000.00) during a one year period."). Accordingly, it satisfied the statute.

---

[2] Defendants attempt to argue, despite *Citrin's* clear holding regarding authorized access, that stealing an employer's trade secrets does not "exceed authorized access." Defendants' only support for this position comes from three district court cases from outside this Circuit. (Def. Mot. at 7-8). One of those cases, *Werner-Masuda* was decided in 2005, one year before *Citrin*, and rejected the *Shurgard* case and the Restatement (Second) of Agency, yet *Citrin* adopted the reasoning of these two authorities. The other two cases, *Shamrock Foods* and *Lockheed Martin*, specifically rejected *Citrin's* interpretation of the CFAA. While *Citrin* may not be binding on these courts, it is binding on courts within this Circuit.

Moreover, a "loss" or "damage" under the CFAA includes the loss in value of a stolen trade secret. See *C.H. Robinson,* 2005 WL 3077998, at * 3 (holding that plaintiff "has properly alleged 'loss' under the CFAA based on its allegations of the loss in value of its trade secrets and loss of competitive edge."). Again, Sam's alleged those exact losses or damages in its Complaint. (*See* Compl. ¶ 35 ("the misappropriation, conversion, use and continued possession of [Sam's Customer List] has harmed and will continue to harm Sam's Wines, causing it to suffer substantial damages.")). And even if the CFAA required an actual impairment to Sam's Customer List, Sam's conversion allegations satisfy this supposed requirement. *See Shurgard*, 119 F. Supp. 2d at 1126-27 (finding that impairment to the "integrity" and thus "damage" under the CFAA encompasses defendants' access and disclosure of plaintiffs' trade secrets.) Hence, no basis exists to dismiss Sam's CFAA claim.

## II. SAM'S PROPERLY ALLEGED DIVERSITY JURISDICTION

Unless it dismisses Sam's CFAA claim, this Court need not even reach defendants' next argument. In it, defendants assert that Sam's claims should be dismissed for failure to properly plead the $75,000 threshold required for diversity jurisdiction.[3] Sam's CFAA claim, however, affords this Court with subject matter jurisdiction over all of Sam's claims under Section 28 U.S.C. § 1367. Accordingly, if that claim stands (which it should), the lack of diversity jurisdiction does not provide a basis for dismissing Sam's case. The issue is not ripe for adjudication.

Even if this Court decides to address the presence of diversity jurisdiction, however, Sam's alleged more than adequate facts to satisfy Section 1332(a)(1)'s jurisdictional threshold.

---

[3] Plaintiffs do not challenge that Sam's adequately pleaded that plaintiff and defendants are citizens of different states – the other required element under Section 1332(a)(1) for diversity jurisdiction.

Indeed, this Circuit requires a heightened finding be made prior to dismissing a diversity case for failing to plead the statutory amount in controversy. Specifically, a district court must find with a "***legal certainty*** [that] the claim is really for less than the jurisdictional amount." *Meridian Security Insur. Co., v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). Mere "uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id; see also Brill v. Countrywide Home Loans, Inc.* 427 F.3d 446 (7th Cir. 2005) ("Once the proponent of jurisdiction has set out the amount in controversy, only a legal certainty that the judgment will be less forecloses federal jurisdiction.").

No such "legal certainty" exists here. Based on two self-serving affidavits, defendants suggest that Sam's damages do not exceed $20,000, or the amount of revenue IWM received from Sam's diverted customers. Putting aside the veracity of these facts (none of which have been tested or verified in discovery), they do not -- as a matter of law -- limit Sam's damages to $20,000. Sam's claims include causes of action for trade secret misappropriation and conversion. These claims entitle Sam's to damages equal to the fair market value of the property at the time of the conversion or, for the trade secrets claim, its lost profits plus the costs of developing the Customer List. *See Telemark Dev. Group v. Mengelt,* 313 F.3d 972, 983 (7th Cir 2003) (under Illinois law, conversion damages are measured by the fair market value of the property at the time of conversion); *Lucini Italia Co. v. Grappolini*, 01 C 6405, 2003 WL 1989605 (N.D. Ill. 2003) (awarding trade secret damages in form of lost profits and development costs of the trade secrets); *Cardiovention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 846 (D. Minn. 2007) ("a plaintiff's actual damages [under Minnesota's analogous trade secrets act] can be measured by the value of the loss of the secret to the plaintiff under the circumstances.").

Either measure produces potential damages far in excess of $75,000. Specifically, the Customer List took over 10 years to develop and contains the names of tens of thousands of customers. A substantial portion of Sam's total sales were made to customers on the Customer List, and the sales to these customers, both in 2005 and today, amount to, at a minimum, hundreds of thousands of dollars annually.[4] (See Ex. A, Thielmann Decl. ¶¶ 3-6). Although Sam's has yet to present expert testimony on the fair market value of the Customer List, the years it took to develop plus the revenues the customers on the list generate will bear on that value. Hence, Sam's recoverable damages far exceed the $75,000.

Moreover, as permitted under Illinois law, both claims seek punitive damages and attorneys' fees. See *Bell Leasing Brokerage, LLC v. Roger Auto Serv., Inc.*, 372 Ill. App. 3d 461, 473, 865 N.E.2d. 558, 569 (1st Dist. 2007) (punitive damages permitted in conversion claims); 735 ILCS §§ 1065/4(b) (allowing punitive damages up to twice amount of actual loss/unjust enrichment if trade secret misappropriation "willful and malicious.") and 1065/5(b)(iii) (attorneys' fees available if misappropriation willful and malicious). When determining the amount in controversy, courts consider these amounts. See *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000) (allowing punitive damages to be used when calculating amount in controversy); *Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d 955, 958 (7th Cir. 1998) (legal fees may count toward amount in controversy); *Jansen v. American Express Corp.*, 06 C 2700, 2007 WL 4293635, at *4 (N.D. Ill. Dec. 6, 2007) (attorneys' fees incurred at time federal jurisdiction invoked may be counted toward amount in controversy). Accordingly,

---

[4] As defendants note in their motion, it is proper for parties to submit materials outside the complaint when briefing on a motion to dismiss for lack of subject matter jurisdiction. (Def. Mot. p. 3.) ¶

even if Sam's damages are limited to $20,000, its punitive damages plus attorneys' fees[5] push it over the jurisdictional threshold.

Finally, Sam's case should not be dismissed at the pleading stage based solely on purported and contested facts set forth in affidavits submitted by defendants and their agents. Sam's has not had the opportunity to take any discovery on any facts at issue in this case, let alone the facts set forth in these affidavits.[6] Indeed, the affidavits are more noteworthy for the facts that do not address that the facts that are addressed. Specifically, Hartig does not deny in his affidavit having access to Sam's list. He further carefully limits his statements (as to the amount of sales that IWM made) to sales to customers whom he "may have encountered while working at Sam's Wines" as opposed to any customer on the list. And, tellingly, he never identifies everyone who received his e-mail or from where he obtained their e-mail addresses.

If this Court were to dismiss Sam's case on the basis of such affidavits, then any defendant can dismiss a diversity case by submitting affidavits that claim plaintiff's damages do not exceed $75,000. Those issues are more properly adjudicated under Rule 56 after the parties have had the opportunity for full and fair discovery. Without *any* discovery having been taken, the supposed facts set forth in defendants' affidavits do not justify any credible finding, let alone one with a "legal certainty," that the jurisdictional threshold is not met. Accordingly, defendants' motion to dismiss on that basis should be denied.

---

[5] If this Court so Orders, Sam's will furnish an affidavit setting forth its attorneys' fees in this Action to date and would request that it be permitted to make that submission *in camera* and *ex parte*.

[6] For example, Sam's should be entitled to take discovery as to the names of *all* the individuals to whom Hartig sent his email (information solely in defendants control), so as to compare those names with Sam's Wines' customers listed on the Customer List. Further, Sam's Wines should be entitled to examine Defendants' sales records to determine if any other sales were made to Sam's Wines' customers who were listed on the Customer List.

Dated: July 31, 2008

Respectfully submitted,

**Sam's Wines & Liquors, Inc.**

By:   /s/ Dane A. Drobny
One of its attorneys
Dane A. Drobny
Christopher A. Weller
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
ddrobny@winston.com
cweller@winston.com

## **CERTIFICATE OF SERVICE**

The undersigned, and attorney, hereby certifies that on July 31, 2008, I caused to be served via the Court's ECF filing system, a copy of the foregoing **Sam's Wines & Liquors, Inc.'s Response to Defendants' Motion to Dismiss** on the following:

>Francis A. Citera
>  citeraf@gtlaw.com
>Paul J. Ferack
>  ferakp@gtlaw.com
>Greenberg Traurig, LLP
>77 West Wacker Drive; Suite 2500
>Chicago, IL 60601


_____/s/ Christopher A. Weller_____