**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAM'S WINES & LIQUORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 570 |
| | ) | |
| vs. | ) | Hon. John W. Darrah |
| | ) | United States District Judge |
| SEAN HARTIG and PLINIO GROUP, | ) | |
| LLC (d/b/a Italian Wine Merchants), | ) | Hon. Susan E. Cox |
| | ) | United States Magistrate Judge |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants filed this motion to dismiss because this case does not belong in federal court under the Computer Fraud and Abuse Act (the "CFAA") or under 28 U.S.C. § 1332 as the amount in controversy was nowhere close to the jurisdictional minimum when this case was filed eight months ago. Over these eight months, nothing has changed. Sam's still claims – based entirely upon allegations of "information and belief," conclusions for which no support has ever been provided (even for facts only they possess), or assertions that just don't make any sense – that Hartig made a copy of Sam's "Rewards Club" Customer List in 2005, and then, **nearly three years later**, began using this "stale" 2005 Rewards Club Customer List to contact "some, if not all" of the tens of thousands of people on that list for the benefit of his new employer, Plinio Group, LLC, a specialty wine retailer in New York that does even not sell beer and liquor like Sam's.[1] Tellingly, no tens of thousands of people have come forward or been identified by

---

[1] The nonsensical and misleading contentions of Sam's are those upon which it bases its claims. See Pl.'s Resp. at 5 (claiming that Hartig took the Sam's Club Rewards Club Customer List "for the purpose of misappropriating it for IWM," notwithstanding the fact that Hartig did not even begin working for IWM until three years later) at 1 (claiming that "Defendants stole Sam's customer list," without ever identifying a single fact to support this assertion, or even attempting to make any sense of the incredible assertions being made in this case about the "stealing" and use, three years later, of a "Rewards Club" Customer List from Sam's)

anyone and all of the allegations in the complaint are, in reality, based upon a single e-mail sent three years after Hartig stopped working at Sam's and conclusory allegations of damages. What these allegations do is not simply stretch the imagination, but confirm that Sam's has failed to allege any CFAA claim and, coupled with the evidence provided by Defendants, establish that subject matter jurisdiction is lacking in this case. (Mot. Dismiss, Ex. 2, Hartig Decl. ¶ 4, Ex. 3, Lee Decl. ¶¶ 2-4) Indeed, the law makes very clear that "a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Here, Sam's has failed to meet this burden.

In fact, putting aside its failures to plead any facts showing that Hartig engaged in "computer misconduct" under the CFAA, what is most noteworthy in Sam's response is its very obvious failure to provide any factual support to show that it has met its burden of showing that subject matter jurisdiction is proper. The CFAA, a specialized federal statute that addresses acts that impair the integrity or availability of computer systems, requires that Sam's suffer "damages" or "losses" addressing the purported "unauthorized computer-access event" that harmed its computers and upon which it bases its federal claim. *Garelli Wong & Assoc., Inc. v. Nichols*, No. 07 C 6227, 2008 WL 161790, at * 4-5 (N.D. Ill. Jan. 16, 2008) ("Allegations of trade secret theft and misappropriation do not suggest such a violation"). Sam's ignores this requirement entirely and instead asks this Court to simply hold that it has stated a claim under the CFAA based upon its conclusory allegations of damages and loss. (Resp. at 6-7) This is contrary to the law in this district and requires the dismissal of Sam's CFAA claim.

Similarly, Sam's attempt to create diversity jurisdiction where none exists fails for the same reasons. Sam's has failed to put forth any competent proof that its damages could be

anything more than possibly a few thousand dollars in lost profits based upon sales made by Hartig, even assuming that these sales should not have been made while he was working at IWM (a point over which Defendants vehemently disagree). The Thielmann Declaration confirms this. Sam's only effort to meet the jurisdictional threshold is by taking the legally impossible position that Sam's is entitled to a payday, namely, the total costs it incurred over the past 10 years to compile and maintain its Rewards Club or, alternatively, some number based upon the hundreds of thousands of dollars in sales made to Sam's customers annually who happen to be included on the Rewards Club list. (Thielmann Decl. ¶¶ 3, 5) This, of course, ignores the reality that Sam's has continued using its Rewards Club Customer List over the past three years and in doing so, continued generating the "hundreds of thousands of dollars in sales" that it otherwise would have generated. In fact, the conversion cases upon which Sam's relies for its "measure of damages" all involve situations where property was stolen to the exclusion of the plaintiff. This obviously did not occur here. Finally, there is no basis for finding that either punitive damages or an award of attorneys' fees can make up for Sam's shortfall under the jurisdictional minimum, particularly where, as here, both awards, even if possible, would need to far exceed any compensatory damages Sam's could possibly recover in this case.

## ARGUMENT

**A.    Plaintiff Has Not Adequately Pleaded Its CFAA Claim and Shown that Hartig "Exceeded His Authority"**

The parties do not dispute the following three facts: (1) that Sam's purported CFAA claim is based "upon the information and belief" that Hartig at some point three years ago "exceeded his authorized access" while working at Sam's, (2) that the plain language of 18 U.S.C. § 1030(e)(6) controls, and (3) that under 18 U.S.C. § 1030(e)(6), a person "exceeds authorized access" *only when* they access "information in the computer that the accesser is not

entitled so to obtain or alter."  Based upon these three facts, it is clear that Sam's has failed to allege a claim that Hartig "exceeded his authority."  Similarly, there is no basis for Sam's position that this result can be avoided based upon the holding of *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418 (7th Cir. 2006), and/or that Court's application of the CFAA to the facts of that case.  Indeed, there is no dispute that *Citrin* involved a different section of the CFAA, never construed the statutory definition in Section 1030(e)(6), and relied upon facts that are entirely distinguishable from the instant case.

In fact, one of the fundamental problems with Sam's reliance upon *Citrin* is that it draws no distinction between a claim under 18 U.S.C. § 1030(a)(5)(A)(iii) based upon accessing computers "without authorization" -- which was addressed by *Citrin* -- and a claim under 18 U.S.C. § 1030(e)(6) based upon "exceeding authorization" which is defined by statute.  As Judge Grady pointed out in *Worldspan L.P. v. Obitz, LLC*, No. 05 C 5386, at *4 (N.D. Ill. Apr. 16, 2006), this position of Sam's is wrong and, in fact, was rejected in the *Citrin* decision:

> As the Seventh Circuit has noted . . . the CFAA explicitly distinguishes between the act of accessing a computer "without authorization" and the act of "exceeding authorized access."  The CFAA provides a definition for the latter phrase.  To 'exceed authorized access' is 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'

Inasmuch as Sam's fails to address this distinction, and indeed seeks to eliminate it by conflating the separate use of these terms in the CFAA, its arguments that the *Citrin* court's rulings regarding a person's actions "without authority" are binding upon this Court's application of 18 U.S.C. § 1030(e)(6) to this case are unsupportable.  In fact, as Sam's is not contending that Hartig was ever acting "without authority" and instead is contending that Hartig "exceeded his authority" by alleging accessing the Rewards List while working at Sam's, the discussion in *Citrin* is not controlling.  In determining the result in this case, the statutory definition of 18

U.S.C. § 1030(e)(6) is all that this Court needs to consider.  Under that definition, Hartig could not have violated Section 1030(e)(6) merely by accessing the Rewards List during his employment at Sam's, as alleged in the Complaint, because according to Sam's he was authorized to do so.  *See Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 967 (D. Ariz. 2008) (holding that based upon the plain language of the statute, a violation of Section 1030(e)(6) occurs only "where initial access is permitted but the access of certain information is not permitted").

Moreover, contrary to Sam's assertion, the vastly different facts at issue here wholly undermine the notion of Sam's CFAA claim.  Here, unlike in *Citrin*, there is no allegation that Hartig altered, damaged, or destroyed any information.  There is no allegation that Hartig deleted files containing confidential information.  And there is no allegation that Hartig loaded files onto Sam's computer system to impair or damage any information of Sam's.  *Citrin*, 440 F.3d at 419. The paucity of allegations against Hartig to support a claim under 18 U.S.C. § 1030(e)(6) is only highlighted by Sam's failure, even in response to Defendants' jurisdictional arguments, to provide any factual support relating to the allegations in Sam's Complaint, or to even provide copies of the purported confidentiality agreement or e-mail mentioned therein.

Clearly, under the different statutory provision at issue in this case, its plain language, and the allegations of the complaint, there is no statutory basis for finding that any of the actions alleged in the complaint state a claim under Section 1030(e)(6).  *Shamrock*, 535 F. Supp. 2d at 965 (holding that "[t]he definition [in Section 1030(e)(6)] obviates any need to revert to outside sources, including principles of agency law, to understand the conduct prohibited by the CFAA.").

**B.    By Failing to Adequately Allege or Support the Jurisdictional Threshold Facts of "Loss" and "Damages," Sam's Has No Claim Under the CFAA.**

Putting aside the fact that Sam's has failed to adequately allege that Hartig "exceeded authorized access," it is also clear that Sam's has failed to adequately support its claims that it suffered the required "damage" or "loss" necessary under the CFAA.  For this reason alone, dismissal is proper.  In fact, after reading Sam's response and the attached declaration, it is clear that Sam's "suffered no impairment to the integrity or availability of data" and that it did not incur costs "because of [an] interruption of service" as required under the CFAA.  This is fatal to Sam's CFAA claim.

As the complaint makes clear, Sam's entire basis for asserting federal question subject matter jurisdiction is its CFAA claim and, accordingly, that depends upon Sam's ability to satisfy the CFAA's requirement that Sam's suffered the "damage" or "loss" required to state a claim. As explained in Defendant's Motion to Dismiss, "damage" is defined as "impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to the offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Still to this day, Sam's only support for meeting these jurisdictional requirements is its conclusory allegations that "Hartig has caused Sam's Wines to incur the loss in terms of responding to his conduct and conducting damage assessments of at least, in the aggregate, five thousand dollars during a one-year period" (without ever explaining what was done) and that "the misappropriation, conversion, use and continued possession of [Sam's Customer List] has

harmed and will continue to harm Sam's Wines, causing it to suffer substantial allegations." (Sam's Resp. at 7)  Conclusory allegations are wholly insufficient to withstand an attack under Rule 12(b)(1).  *Meridian*, 441 F.3d at 543 ("A proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence.")   Nor could these conclusory allegations even withstand an attack under Rule 12(b)(6). *See Garelli*, 2008 WL 161790, at *7 (rejecting the party's argument that it can plead "loss" simply by reciting the language in the statute and noting that the "Supreme Court recently clarified that to properly plead a cause of action, a plaintiff 'must provide the 'grounds' of his 'entitle[ment] to relief' [with] more than labels and conclusions, and a formulaic recitation of a cause of action will not do").

In any event, the fundamental problem with Sam's allegation of "loss" is that it misstates and fails to meet the applicable standard.  As numerous courts have recognized, "loss" under the CFAA requires that the "loss" be based upon the cost of investigating or remedying damage to a computer or a cost incurred because of "an interruption of service."  *Garelli*, 2008 WL 161790, at *6 (holding that a civil violation of the CFAA based on loss "is limited to costs that are directly associated with, or with addressing, an unauthorized computer-access event," and finding that mere allegations of "loss" without elaboration of what was done to the affected computer or system are insufficient); *Nexans Wires, S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) (noting that "the meaning of loss, both before and after the term was defined by statute, has consistently meant a cost of investigating and remedying damage to a computer or a cost incurred because the computer's service was interrupted"); *S.W. Airlines Co. v. Harris*, No. 3:07-CV-0583-D, 2007 WL 32854616, at *4 (N.D. Tex. Nov. 2, 2007) (holding that "nowhere in its complaint or its responsive pleadings does Plaintiff show that it suffered a

'loss' . . . 'a cost of investigating or remedying damage to a computer, or a cost because the computer's service was interrupted"). Sam's complaint and rebuttal to Defendants' jurisdictional attack is devoid of any such allegations of loss "related to a computer or in response to an interruption of service." Sam's instead purposefully stops short of making any such allegation, for good reason: it is inconceivable that any such loss was incurred under circumstances where, as here, there is no allegation that Sam's computers were impaired, hacked into, or that their service was impaired. Rather, the sole allegation in Sam's complaint is the conclusory allegation "upon information and belief" that nearly three years ago Hartig accessed a copy of the Rewards List, not that he did anything to damage or impair computers at Sam's.

Similarly, Sam's assertion in its response brief that it can rely upon its conclusory allegation that Defendants' purportedly "took" a copy of Sam's Club Rewards List three years ago in order to satisfy the CFAA's "damage" requirement is also groundless. Courts in this district and elsewhere have already held that such allegations are insufficient as a matter of law. *Worldspan*, 2006 WL 1069128, at *5 ("Given the[] definitions of "damage" and "integrity," we reject Worldspan's argument that the mere "taking of information" constitutes "damage" under the CFAA."); *Garrelli*, 2008 WL 161790, at *6 ("Allegations of trade secret theft and misappropriation do not suggest such a violation."). The statute plainly requires that the damage must relate to an "impairment to the integrity or availability of data, a program, a system, or information." Sam's has not and cannot articulate any facts to show that the Rewards Club Customer List it has continued to update and use over the past three years was impaired or made unavailable in any way by anything that happened three years ago.

In fact, as the *Garelli Wong & Associates* court pointed out, the sole case relied upon by Sam's for its position that the mere taking of information constitutes damage under the CFAA,

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000), was decided prior to the 2001 amendments to the CFAA which added definitions of the statutory elements of "loss" and "damage." In light of those amendments, and the cases decided post-amendment construing these definitions under the CFAA, the *Shurgard* case is no longer good law. *Garelli*, 2008 WL 161790, at *6. To the extent Sam's purports to rely upon *C.H. Robinson*, 2005 WL 3077998, at *3, for the position that loss of competitive advantage or lost trade secrets are sufficient to satisfy the CFAA, that case was similarly based upon the holding in *Shurgard* and is inapposite for the same reason. *See C.H. Robinson v. Worldwide, Inc. v. Command Trans., LLC*, No. 05 C 3401, 2005 WL 3077998, at *3 (N.D. Ill. Nov. 16, 2005) (indicating that its reasoning was based upon the court's decision from the Western District of Washington); *see also Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 351929, at *3 (N.D. Ill. Feb. 11, 2005) (relying upon the decision in *Hostetler* which also relied upon the holding of the pre-amendment *Shurgard* case).

In short, inasmuch as Sam's has wholly failed to support its claims of "loss" or "damage," and it relies entirely upon pre-amendment case law, its CFAA claim is properly dismissed.

**C.    None of Sam's Purported Bases for Diversity Jurisdiction Has Any Merit**

Given that Sam's is unable to state a CFAA claim, the only basis for keeping this case in federal court is if Sam's can satisfy the $75,000 threshold in 28 U.S.C. § 1332 even though, at best, the gross sales from persons whom Hartig may have encountered while working at Sam's more than three years ago and who placed orders through Hartig while working at IWM three years later amount to less than $20,000 (Mot. Dismiss Ex. 3, Lee Decl. ¶¶ 2-4), meaning that any "lost profits" would fall well below that amount and accordingly well short of the jurisdictional

minimum.  In its response, Sam's offers no calculation in rebuttal.  Instead, it claims that the jurisdictional minimum can be met based upon a number of other theories, all of which either have no merit or are legally impossible in any event.

First, Sam's argues that it can meet the jurisdictional minimum because its claims, if proven, would entitle Sam's to recover the fair market value of the Rewards Club List (which Sam's purports to value based upon the hundreds of thousands of dollars it sells to customers who happen to be on the list), or the full costs of developing the Rewards Club List over the past ten years.  Both of these positions are groundless.  *See Gardnyski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (in response to a jurisdictional attack, legally impossible damages certainly flunk the "legal certainty" test).  The basis for these claims, as revealed by the cases cited in Sam's response brief, is the indefensible position that the damages would be permissible under its state law claims of conversion or misappropriation of trade secrets.  But not even the cases cited by Sam's support this position.  Indeed, the cases allowing such a measure of damages involve only those situations where the purported conversion or misappropriation resulted in the total loss of the property to its rightful owner or where the rightful owner was deprived of using the property in dispute.  *See Telemark Dev. Group v. Mengelt*, 313 F.3d 972, 983 (7th Cir. 2003) (stating that "the ordinary measure of damages for conversion of personal property is the fair market value of the property at the time of conversion," but involving a case where the stock at issue was "converted" insofar as defendant's failure to deliver the stock precluded the plaintiff from enjoying any ownership from the stock or deriving any benefit from the property); *Lucini Italia Co. v. Grappolini*, 01 C 6405, 2003 WL 1989605, at *7-13, 19 (N.D. Ill. 2003) (awarding lost profits and certain development costs, but only where the defendant was found to have misappropriated the trade secrets, used them to sign his own exclusive contract with a supplier,

and in doing so, excluding the plaintiff from selling products and shutting him out of the market completely); *Cardiovention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 846 (D. Minn. 2007) (citing case law that a plaintiff may recover damages according to its investment value, but only where the "defendant's actions caused complete destruction of the trade secret").  Here, the recovery of any such damages is impossible.  It is undisputed that for the past three years, Sam's continued using its Rewards List and its use of the list was not interrupted in any way by any actions of Defendants over those three years.  There is no set of facts under the conversion and misappropriation theories that would warrant recovery of Sam's "development costs."  Damages would be limited to any potential lost profits or some similar measure, already shown by Defendants to amount to, at most, thousands of dollars.

Second, Sam's is similarly wrong when it claims that it can meet the jurisdictional minimum based upon a potential award of punitive damages.  While there may be circumstances where punitive damages can be taken into account when considering claims of conversion or trade secret misappropriation, the question here is not simply whether they could be recovered, but rather if Sam's has adduced facts to show that it would be entitled to them in an amount sufficient to put its recovery over the jurisdictional amount.  The Seventh Circuit has held that "[i]n cases where the defendants contest punitive damage calculations, we require the plaintiff to support its claim with 'competent proof,' lest fanciful claims for punitive damages end up defeating the statute's requirement of a particular amount in controversy."  *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 980 (7th Cir. 2000).  Here, Sam's claims of punitive damages are nothing more than fanciful.  Once again, it makes no effort to show how it could plausibly obtain an award of punitive damages under the allegations in its complaint sufficient to pass the jurisdictional minimum (which would mean, at a minimum, an award at least in excess of

$60,000 or more).  Sam's admits that IWM could not have learned about any of the allegations in

the complaint until at least three years after the Rewards List was purportedly copied.  IWM did

not even know of Hartig at the time the Rewards List was purportedly accessed and had not even

been introduced to him until three years later.  *See Jansen v. Am. Express Corp.*, No. 06 C 2700,

2007 WL 4293635, at *4 (N.D. Ill. Dec. 6, 2007).  The sole basis for concluding that Hartig took

a copy of the Rewards List in 2005 is a single e-mail message referred to, but never attached to,

the Complaint in which there is no suggestion that the Rewards List was even taken.  These

facts, coupled with the lack of any factual allegations in the complaint, show that any award of

punitive damages is sheer speculation.  *Del Vecchio*, 230 F.3d at 980 (noting that the proponent

of jurisdiction is the one who bears the burden of proving that the case in properly in federal

court).

Finally, Sam's claim relating to attorneys' fees should be dismissed out of hand.  Since

Sam's failed to even include the amount of fees it purportedly incurred before its complaint was

filed, there is no basis for even including this amount in any jurisdictional analysis.  But even

assuming that for purposes of a trade misappropriation claim, a court could, in its discretion,

award attorneys' fees if Sam's were to prevail and show that any purported misappropriation

three years ago was malicious, no facts have been adduced to show that any such award would

be proper and the critical inquiry at this point is what had been incurred already at the time this

case was filed in any event.  *Gardynski-Leschuck*, 142 F.3d at 958 ("Jurisdiction depends upon

on the state of affairs when the case begins; what happens later is irrelevant").

## CONCLUSION

This case has been pending before this Court for the past eight months and should be

dismissed because Sam's has failed to meet its burden of showing that this case should remain in

federal court.  The allegations of this case, based almost entirely upon information and belief, reveal only that this dispute concerns actions taken three years ago and a claim, based upon a single e-mail, that does not even support the type of conduct upon which Sam's purports to base its complaint.  There is no basis for alleging a claim under the CFAA and, to this day, Sam's has failed to provide any factual support to show that its claims exceed the minimum jurisdictional threshold of $75,000.  For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing this case in its entirety and granting such other and further relief that this Court deems appropriate and just.

Dated: August 14, 2008                            Respectfully submitted,

                                                  /s/ Paul J. Ferak
                                                  Francis A. Citera
                                                  Paul J. Ferak
                                                  Greenberg Traurig, LLP
                                                  77 W. Wacker Drive, Suite 2500
                                                  Chicago, Illinois 60661
                                                  Tel:    (312) 456-8400
                                                  Fax:    (312) 456-8435

                                                  Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2008, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following registered parties:

> Dane A. Drobny
> Christopher Weller
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, Illinois  60601
> ddrobny@winston.com
> cweller@winston.com

/s/  Paul J. Ferak